IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHER-D, INC., T/A PINE KNOB INN | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 05-5936 |
| GREAT AMERICAN ALLIANCE | : | |
| INSURANCE COMPANY | : | |

**SURRICK, J.**                                                                                          **JUNE 15th , 2009**

### MEMORANDUM

Presently before the Court is Defendant's Motion for Reconsideration of the Court's Opinion and Order of April 7, 2009. (Doc. No. 23.) For the following reasons, the Motion will be denied.

**I.      BACKGROUND**

This case is an insurance coverage dispute that arose between an insured, Pine Knob Inn ("Plaintiff"), and its insurer, Great American Alliance Insurance Company ("Defendant"), following two fires. The facts of the case are set forth more fully in the April 7, 2009 Memorandum and Order granting in part and denying in part Defendant's Motion for Summary Judgment. We recite only the facts that are relevant to the instant Motion.

On October 1, 2004, an electrical fire damaged Plaintiff's country inn. Plaintiff promptly notified Defendant of the covered loss and of its intent to resume operations. Defendant thereafter began the process of adjusting Plaintiff's insurance claim. In January 2005, as the adjustment process continued, Defendant did not renew Plaintiff's insurance policy and Plaintiff was unable to obtain other coverage. Meanwhile, vandals began entering Plaintiff's country inn and causing additional damage. Defendant was told about the trespasses and vandalism. On

May 23, 2005, Defendant still had not paid Plaintiff for the loss from the first fire when vandals entered the country inn and caused a second fire that completely destroyed the building.

On November 1, 2005, Plaintiff filed a two-count Complaint. Count I alleges that Defendant breached its contract with Plaintiff to provide insurance coverage under the policy. (*See* Compl. ¶¶ 20-24.) Count II alleges that Defendant acted in bad faith under Pennsylvania law, 42 Pa. Cons. Stat. Ann. § 8371, and "other applicable law." (*Id.* ¶¶ 25-28.) In the April 7, 2009 Memorandum and Order, summary judgment was granted in favor of Defendant on Count I. We concluded that the record did not support a finding that the first fire, a covered harm under Plaintiff's policy, was the proximate cause of the second fire. This being the case, the policy did not cover losses from the second fire. *See Cher-D, Inc., v. Great Am. Alliance Ins. Co.*, No. 05-5936, 2009 WL 943530, at *7 (E.D. Pa. Apr. 7, 2009).

Summary judgment was denied on Count II. We concluded that a reasonable jury could find by clear and convincing evidence that Defendant acted in bad faith by delaying payment for the first fire. *See id.* at *12. We reasoned that Defendant waited nine months before providing its estimate of the damage from the first fire and six months after Plaintiff had submitted its own estimate. We found no evidence in the record to suggest a reason for the delay. The contractor that provided Defendant's estimate had visited the premises within two weeks of the fire. We observed that, "[o]nly after the second fire destroyed what remained of Plaintiff's building did Defendant finally get around to providing its estimate of the damage from the first fire." *Id.* Defendant's estimate of approximately $1 million did not differ significantly from Plaintiff's earlier estimate of $1,250,745.11. *Id.*

Defendant filed the instant Motion asking us to reconsider the April 7, 2009 decision as

to Count II and enter judgment in its favor.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) allows parties to file a motion to alter or amend a judgment.  *See* Fed. R. Civ. P. 59(e).  A Rule 59(e) motion is a motion for reconsideration.  *See* E.D. Pa. Local R. Civ. P. 7.1(g).  The purpose of a motion for reconsideration is to "'correct manifest errors of law or fact or [to] present newly discovered evidence.'"  *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).  A judgment may be altered or amended on three grounds:  "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *Id.* (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

"Dissatisfaction with the Court's ruling is not a proper basis for reconsideration."  *Id.* (citation omitted); *see also Glenolden Energy Co. v. Borough of Glenolden*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (finding that a motion for reconsideration is not properly grounded on request to rethink a decision the court has already made).  Thus, courts need not "reconsider repetitive arguments that have [already] been fully examined."  *Sonders v. PNC Bank, N.A.*, No. 01-3083, 2003 WL 22310301, at *1 (E. D. Pa. Oct. 9, 2003) (citing *Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394, 398 (E.D. Pa. 2002)).  In addition, a motion for reconsideration may not be used as a vehicle to assert new arguments that could have been but were not previously presented to the court.  *See Bailey v. United Airlines*, 279 F.3d 194, 201 (3d Cir. 2002) ("A district court may properly refuse to consider evidence presented in a

motion for reconsideration when the evidence was available prior to summary judgment."); *Conway v. A.I. duPont Hosp. for Children*, No. 04-4862, 2009 WL 1492178, at *3 (E.D. Pa. May 26, 2009) (denying motion for reconsideration where evidence was available but not presented to the court at the time of its decision); *Assisted Living Group, Inc., v. Upper Dublin Twp.*, No. 97-3427, 1997 WL 762801, at *2 (E.D. Pa. Dec. 8, 1997) (denying motion for reconsideration where "movants have not come forward with any newly discovered evidence, do not cite an intervening change in controlling law and fail to point out any clear error of law or manifest injustice"). Due to the strong interest in the finality of judgments, courts should grant motions for reconsideration sparingly. *Slagan v. John Whitman & Assoc., Inc.*, No. 97-3961, 1997 WL 611587, at *1 (E.D. Pa. Sept. 26, 1997); *see also A.K. Stamping Co. v. Instrument Specialties Co.*, 106 F. Supp. 2d 627, 662 (D.N.J. 2000) (noting that Rule 56(e) provides an "extraordinary remedy" that is " 'to be granted sparingly'" (quoting *NL Indus., Inc., v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996))). In considering the instant motion for reconsideration, we must determine whether (1) a clear error of law or manifest injustice was committed; (2) there has been an intervening change in controlling law; or (3) new evidence has become available.

### III. DISCUSSION

Defendant argues that we should reconsider the April 7, 2009 Memorandum and Order denying summary judgment on Count II because Plaintiff's Complaint did not provide fair notice of a bad faith claim based on Defendant's adjustment of the October 2004 fire. Alternatively, Defendant argues that the evidence does not support such a claim, entitling Defendant to summary judgment. Defendant offers two affidavits and multiple pages of deposition testimony

motion for reconsideration when the evidence was available prior to summary judgment."); *Conway v. A.I. duPont Hosp. for Children*, No. 04-4862, 2009 WL 1492178, at *3 (E.D. Pa. May 26, 2009) (denying motion for reconsideration where evidence was available but not presented to the court at the time of its decision); *Assisted Living Group, Inc., v. Upper Dublin Twp.*, No. 97-3427, 1997 WL 762801, at *2 (E.D. Pa. Dec. 8, 1997) (denying motion for reconsideration where "movants have not come forward with any newly discovered evidence, do not cite an intervening change in controlling law and fail to point out any clear error of law or manifest injustice"). Due to the strong interest in the finality of judgments, courts should grant motions for reconsideration sparingly. *Slagan v. John Whitman & Assoc., Inc.*, No. 97-3961, 1997 WL 611587, at *1 (E.D. Pa. Sept. 26, 1997); *see also A.K. Stamping Co. v. Instrument Specialties Co.*, 106 F. Supp. 2d 627, 662 (D.N.J. 2000) (noting that Rule 56(e) provides an "extraordinary remedy" that is " 'to be granted sparingly'" (quoting *NL Indus., Inc., v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996))). In considering the instant motion for reconsideration, we must determine whether (1) a clear error of law or manifest injustice was committed; (2) there has been an intervening change in controlling law; or (3) new evidence has become available.

**III.    DISCUSSION**

Defendant argues that we should reconsider the April 7, 2009 Memorandum and Order denying summary judgment on Count II because Plaintiff's Complaint did not provide fair notice of a bad faith claim based on Defendant's adjustment of the October 2004 fire. Alternatively, Defendant argues that the evidence does not support such a claim, entitling Defendant to summary judgment. Defendant offers two affidavits and multiple pages of deposition testimony

in support of the request for reconsideration.  However, the affidavits and deposition testimony were not a part of the record when we decided Defendant's motion for summary judgment.  Defendant also asks us to strike Plaintiff's claim of compensatory and punitive damages.

  **A.**  **Notice of Plaintiff's Bad Faith Claim in Count II**

  In the April 7, 2009 Memorandum Opinion, we addressed Defendant's argument that Count II referred only to Defendant's adjustment of the May 2005 fire – and not the earlier October 2004 fire – noting that

> Defendant's reading is not the only reasonable reading of Count II, and the Complaint gave Defendant fair notice of claims based on both fires.  Drawing all facts and inferences in Plaintiff's favor, as we must at this juncture, we will not give the Complaint the strained reading that Defendant suggests.

*Cher-D*, 2009 WL 943530, at *12 n.8.  We reasoned that "Count Two incorporates the preceding paragraphs of the Complaint 'as if set forth fully'" and "[t]he preceding paragraphs of the Complaint make it clear that Count Two could refer to either the first fire or the second fire." *Id.* at *8.  Now, Defendant again argues that Plaintiff's claim "is premised solely and exclusively on Defendant's alleged bad-faith denial of the May 2005 fire loss claim, not an alleged delay in payment of the October 2004 fire loss claim." (Doc. No. 23-3 at 4.)  The gravamen of Defendant's argument is that it never denied coverage for the October 2004 fire, so "the only reasonable interpretation of the Plaintiff's complaint . . . is that the claim is predicated on the denial of coverage for the May 2005 fire." (*Id.*)  We understood Defendant's argument then, and we understand it now.  Defendant does not offer newly discovered evidence and does not cite an intervening change in controlling law.  Defendant's insistence that its view of the Complaint is the correct one does not amount to a clear error of law or manifest injustice.  A motion for

reconsideration on this basis is improper.

Nevertheless, we will briefly review the basis for our April 7, 2009 decision denying summary judgment on Count II with respect to Defendant's adjustment of the first fire. The Complaint alleges that many months passed while Defendant "'investigated' the loss" from the first fire (Compl. ¶¶ 10-14) (quotation marks in original), and Defendant "had *still* not provided the necessary funds for [Plaintiff]" when the vandalism began to occur (*id.* ¶ 11) (emphasis added). The Complaint alleges that "[b]y May 23, 2005, the defendant *still* had not properly compensated [Plaintiff] for the damage" from the first fire when the second fire occurred. (*Id.* ¶¶ 14-15.) (emphasis added). The Complaint alleges that "[b]ut for the first fire, the second fire would not have occurred." (*Id.* ¶ 17.) Implicit in all of these allegations is the idea that the second fire was the result of Defendant's untimely payment under the policy for losses from the first fire. Count II incorporates these allegations. (*Id.* ¶ 25.) While Count II speaks of Defendant's act of "declining coverage," Count II also speaks of Defendant's "refusal . . . to compensate [Plaintiff] for its losses" as constituting bad faith toward an insured. (*Id.* ¶ 26.) As we observed in the April 7, 2009 Memorandum, Defendant's reading of the Complaint is strained. Notice pleading is a modest standard, and the Complaint adequately placed Defendant on notice of Plaintiff's bad faith claim in relation to the first fire. *See Bell Atl. v. Twombly*, 550 U.S. 544, 585 (2007) (noting that "the 'simplified notice pleading standard' of the Federal Rules "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims") (citation omitted). To the extent that the Complaint may be ambiguous with regard to the bad faith claim, Defendant had an opportunity to probe the contours of Plaintiff's claim during the discovery process. Defendant presents no

evidence that Plaintiff disavowed our reading of the Complaint during the discovery process. *Cf. Carter v. Ford Motor Co.*, 561 F.3d 562, 568 (6th Cir. 2009) (holding that the plaintiff's ambiguous complaint must be considered in light of her discovery responses about the scope of her claim and finding it unfair to allow the plaintiff to pursue a claim that she expressly disavowed during her deposition and which did not otherwise come to light during the discovery period).

Defendant argues that Plaintiff's response to its motion for summary judgment "clearly framed the issues presented by the complaint in this case" as relating to Defendant's adjustment of the claim for the May 2005 fire only. (Doc. No. 23-3 at 7.) Defendant points to the following paragraph in its motion for summary judgment, which Plaintiff admitted in its own response:

> [Plaintiff's] complaint alleges that by refusing to compensate [Plaintiff] under the Policy for damage caused by the May 2005 fire, [Defendant] breached the Policy and acted in bad faith within the meaning of 42 Pa. Cons. Stat. Ann. § 8371. (citation omitted)

(Doc. No. 23-3 at 7 (*citing* Doc. No. 12 ¶ 19; Doc. No. 17 ¶ 19).) Defendant would have us interpret this admission to mean that Plaintiff's bad faith claim relates only to the denial of coverage for the May 2005 fire. However, in the same filing, Plaintiff explicitly stated that its bad faith claim "is not for denying the claim for the May 2005 fire. Rather, defendant's 'bad faith' is evident in the way it handled the adjustment of the first fire." (Doc. No. 17-2 at 12.) Plaintiff devoted several pages of its brief to this argument. Plaintiff clearly did not admit that its bad faith claim related only to Defendant's denial of coverage for the May 2005 claim. Defendant's interpretation of Plaintiff's "admission," viewed out of context, is misleading. Moreover, the admission is not coextensive with the Complaint and thus is not mutually

exclusive of Plaintiff's bad faith claim in relation to the October 2004 fire.

### B. Defendant's Submission of Additional Evidence

Defendant submits two affidavits from potential witnesses to show that the Court erred by denying summary judgment on Count II. (*See* Doc. No. 23-4, Exs. B, C.) Both affidavits are dated April 24, 2009, after the decision on Defendant's motion for summary judgment had been handed down. Furthermore, there is nothing in this record indicating that the evidence underlying the affidavits was unavailable when Defendant filed its motion for summary judgment and its reply. Accordingly, we will disregard the affidavits as a basis for reconsideration. *See Bailey*, 279 F.3d at 201 ("A district court may properly refuse to consider evidence presented in a motion for reconsideration when the evidence was available prior to summary judgment."); *Harsco*, 779 F.2d at 909 (observing that trial court properly disregarded affidavit filed in support of a motion for reconsideration where the affidavit "contain[ed] evidence that was available prior to summary judgment"); *Ogin v. Ahmed*, No. 06-0350, 2008 WL 4722390, at *3 (M.D. Pa. Sept. 2, 2008) (denying motion for reconsideration and finding that an affidavit was not new evidence where the defendants did not argue that the affiant was previously unavailable); *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, No. 94-7316, 2004 WL 2095442, at *1 (E.D. Pa. Sept. 16, 2004) (denying motion to reconsider premised on purportedly new documents that existed "well before summary judgment motions were filed").

Defendant also submits deposition testimony from Plaintiff's liaison, Clark Jones, for the proposition that "a claim of the complexity and size of [Plaintiff's] claim could take up to six months to adjust" and that Jones was responsible for initiating the process. (Doc. No. 23-3 at 11 (*citing* Jones Dep. 23, 31).) These portions of Jones's testimony were not a part of the record

when we decided Defendant's motion for summary judgment.  Indeed, Defendant did not file any part of Jones's deposition testimony with its summary judgment briefing.  The only portions of Jones's testimony that were filed with the Court came from Plaintiff, and pages 23 and 31 were not included.  We will also disregard these pages as a basis for reconsideration.[1]

Defendant submits additional deposition testimony to support its argument that Plaintiff failed to ask for more advances in order to begin rebuilding and failed to explain the basis of its belief that Defendant was responsible for rebuilding the inn.  (Doc. No. 23-3 at 12 (citing J. Garman Dep. 60-66; C. Garman Dep. 15-17; Jones Dep. 69-70).)  Of all the deposition testimony that Defendant now cites in support of this proposition, only two pages were in the record when we decided the motion.  (*See* Doc. No. 17-6 at 9 (J. Garman Dep. 64); Doc. No. 17-5 at 7 (C. Garman Dep. 16)).  The April 7, 2009 Memorandum quotes directly from those two pages.  *Cher-D*, 2009 WL 943530, at *2 (citing J. Garman Dep. 64); *id.* (citing C. Garman Dep. 16).  Defendant's citation to the testimony of record, which we considered and quoted in the April 7, 2009 Memorandum, does not alter the conclusion that we reached.  We will disregard the testimony that was available before summary judgment but not filed with the Court.  *See Calhoun v. Mann*, No. 08-0458, 2009 WL 159276, at * (E.D. Pa. Jan. 22, 2009) ("Reconsideration is not permitted simply to allow a 'second bite at the apple.'" (citing *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995))).

A motion for reconsideration is appropriate only when a clear error of law or manifest

---

[1] Defendant cites other deposition testimony from Jones to show that Plaintiff was not interested in a piecemeal settlement of its insurance claim and instead wanted a global settlement.  (*See* Doc. No. 23-3 at 17 (*citing* Jones Dep. 46-47).)  This testimony was in the record, and it was considered at the summary judgment stage.  However, the testimony was not and is not outcome-determinative.

injustice was committed; there has been an intervening change in controlling law; or new evidence has become available.  None of these circumstances is present here.

        C.      **Availability of Compensatory and Punitive Damages**

Defendant asks us to strike Plaintiff's claims of compensatory and punitive damages. Defendant argues that the Pennsylvania bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371, does not authorize an award of compensatory damages.  (Doc. No. 23-3 at 21.)  Defendant also argues that "there is nothing in [Defendant's] conduct in this case that screams outrage" to justify an award of punitive damages.  (*Id.*)  We addressed neither compensatory damages nor punitive damages in the April 7, 2009 Memorandum and Order.  We did discuss a case involving punitive damages in the context of a bad faith insurance claim to demonstrate why Plaintiff's bad faith claim should proceed to a jury.  *See Cher-D*, 2009 WL 943530, at *11 (citing *Kraeger v. Nationwide Mut. Ins. Co.*, No. 95-7550, 1996 WL 711488, at *3 (E.D. Pa. Dec. 6, 1996)). However, we did not discuss whether punitive damages were appropriate for a jury's consideration in this case because Defendant did not raise the issue in its summary judgment briefing.  (*See* Doc. Nos. 12-13, 18.)

The issue of whether compensatory damages are available under section 8371 is not as clear as Defendant would have us believe. *See, e.g.*, *Ash v. Continental Ins. Co.*, 932 A.2d 877, 883 (Pa. 2007) (discussing history of section 8371); *Birth Ctr. v. St. Paul Co.*, 787 A.2d 376 (Pa. 2001) (rejecting insurer's argument that compensatory damages were not available under section 8371, since the statute did not supplant the existing common law remedy and the application of section 8371 is not inconsistent with the common law).  Indeed, Plaintiff's Complaint alleges that Defendant's conduct constitutes bad faith under "section 8371 and other applicable law,"

10

leaving it unclear whether Plaintiff is pursuing a bad faith claim based on contract principles in addition to the statutory tort claim. (Compl. ¶ 27.) In any event, neither of these issues is properly before us on a motion for reconsideration. We will address the availability of compensatory and punitive damages upon motion with more complete briefing from the parties.

### IV.     CONCLUSION

Defendant has not shown a proper basis for us to reconsider the April 7, 2009 Memorandum and Order. We note, however, that the evidence that Defendant has belatedly provided – while inappropriate in a motion for reconsideration – could affect Plaintiff's ability to prove a bad faith claim by clear and convincing evidence at trial.

BY THE COURT:


 /s/ R. Barclay Surrick
R. Barclay Surrick, J.